United States District Court
Southern District of Texas
**ENTERED**
August 30, 2022
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

|  |  |  |
|---|---|---|
| Melanie Meza, O/B/O Gary M . Meza, Deceased | § § § | |
| *Plaintiff,* | § | |
| | § | Case No. 4:21-cv-01536 |
| v. | § | |
| | § | |
| Kilolo Kijakazi, | § | |
| Acting Commissioner, Social | § | |
| Security Administration, | § | |
| | § | |
| *Defendant.* | | |

## **MEMORANDUM AND RECOMMENDATION**

Plaintiff Melanie Meza challenges the denial of social security disability insurance benefits and supplemental security income for her late husband, Gary Meza. Dkt. 17. This appeal was referred to the undersigned judge. Dkt. 21. After carefully reviewing the parties' cross-motions for summary judgment, Dkts. 17-19, the record, Dkt. 10, and the applicable law, it is recommended that the Court affirm the decision of the Social Security Administration.

## **Background and Procedural History**

For about twenty years, Gary Meza worked as a kitchen chef. R.289. Around 2015, Mr. Meza began to develop some medical conditions. R.353. He chronically used alcohol and abused drugs, suffered from anger management

issues, exhibited symptoms of depression.  R.17, 54, 72, 1858-60.  Mr. Meza also began experiencing chest pain in 2015.  R.353.  Subsequently, he was diagnosed with coronary artery disease, as well as hypothyroidism and degenerative disc disease.  R.14, 17.

Mr. Meza was treated in an emergency room or was hospitalized ten times between 2016 and 2019.  R.17, 65.  In some instances, his coronary issues led to hospitalization.  R.1694.  In other instances, his symptoms were attributed to other causes, like lack of fluids.  R.2213.  He had seven stents implanted to improve blood flow.  R.47.

In December 2016, Mr. Meza sought disability insurance benefits and supplemental security income from the Social Security Administration.  R.241-42.  After his claim was denied originally and again on reconsideration, Mr. Meza appealed the decision and requested a hearing before an ALJ.  R.136-43, 144-45, 153-54.

Mr. Meza, two medical experts, and a vocational expert testified at the hearing.  R.42-79.  The ALJ concluded that Mr. Meza had a sufficient Residual Functional Capacity ("RFC") to perform light work, but he could never climb ladders, ropes, or scaffolds, he would have to avoid extreme heat or cold, and he could have no more than occasional contact with coworkers, supervisors, or the general public.  R.16.  After further concluding that someone with Mr. Meza's limitations could perform certain jobs that existed in significant

numbers in the national economy, the ALJ found Mr. Meza not disabled and denied his application.  R.20-21.

While his appeal was pending before the Social Security Administration Appeals Council, Mr. Meza passed away.  R.5-6.  His widow, Melanie Meza, was substituted as the party for Mr. Meza.  R.5.  After the Appeals Council affirmed the ALJ's decision, and on her late husband's behalf, Ms. Meza sought review from this Court.  Dkt. 1.

## Standard of Review

A reviewing court assesses the Commissioner's denial of social security benefits "only to ascertain whether (1) the final decision is supported by substantial evidence and (2) whether the Commissioner used the proper legal standards to evaluate the evidence."  *Whitehead v. Colvin*, 820 F.3d 776, 779 (5th Cir. 2016) (per curiam) (internal quotation marks omitted).  "Substantial evidence is such relevant evidence as a reasonable mind might accept to support a conclusion."  *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)) (internal quotations omitted).  It is "more than a scintilla, but it need not be a preponderance."  *Taylor v. Astrue*, 706 F.3d 600, 602 (5th Cir. 2012) (quoting *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995)) (internal quotation marks omitted).  When conducting its review, the Court cannot reweigh the evidence or substitute its judgment for the Commissioner's.  *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir.

1999).  "Conflicts of evidence are for the Commissioner, not the courts, to resolve." *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005).

## Analysis

"The Commissioner uses a sequential, five-step approach to determine whether a claimant is ... disabled: (1) whether the claimant is presently performing substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals a listed impairment; (4) whether the impairment prevents the claimant from doing past relevant work; and (5) whether the impairment prevents the claimant from performing any other substantial gainful activity." *Morgan v. Colvin*, 803 F.3d 773, 776 (5th Cir. 2015) (citing 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4)) (footnote omitted).  "Under this five-step approach, if the Commissioner determines at a prior step that the applicant is or is not disabled, the evaluation process stops ...." *Id.* (citing 20 C.F.R. § 404.1520(a)(4)).  The claimant bears the burden of proof in the first four steps.  *Kneeland v. Berryhill*, 850 F.3d 749, 753-54 (5th Cir. 2017).  At the fifth step, the burden of proof shifts to the Commissioner "to establish the existence of other available substantial gainful employment that a claimant can perform." *Id.*

Ms. Meza challenges two portions of the ALJ's findings.  First, she argues that the ALJ should have considered Mr. Meza's depression as a severe

limitation at step two of the analysis. Dkt. 17 at 6-12. Second, she argues that the ALJ failed to consider all of the evidence in forming his RFC. *Id.* at 12-16.

As explained below, the Court agrees with Ms. Meza that the ALJ erred when classifying Mr. Meza's depression as non-severe but concludes that the error was harmless. Regarding Ms. Meza's second contention, substantial record evidence supports the ALJ's formulation of the RFC. Accordingly, the ALJ's decision should be affirmed.

## I.   **The ALJ committed harmless error when failing to classify Mr. Meza's depression as a severe limitation.**

Ms. Meza's first contention disputes the ALJ's analysis at step two, which requires assessing the claimant's medical record and identifying all limitations that are "severe." *See* 20 C.F.R. §404.1520(a)(4)(ii). The ALJ found that Mr. Meza suffered from three severe impairments—hypothyroidism, degenerative disc disease of the lumbar spine, and coronary artery disease. R.14. Although the ALJ noted that Mr. Meza also suffered from depression, the ALJ concluded that the depression was non-severe. R.15. Ms. Meza disputes that conclusion.

### A.   **The ALJ erred in failing to consider Mr. Meza's depression a severe limitation.**

When evaluating the severity of an impairment, an ALJ determines the impairment's impact on four functional areas: (1) understanding,

remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing one's self. 20 C.F.R. § 404.1520a(c)(3). The ALJ must then rate the claimant's limitation in those areas on a five-point scale: "[n]one, mild, moderate, marked, and extreme." *Id.* § 404.1520a(c)(4). The regulations specify that a rating of "none" or "mild" limitations generally means that an impairment is "not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in [the claimant's] ability to do basic work activities ...." *Id.* § 404.1520a(d)(1). These regulations dovetail with the Fifth Circuit's conclusion that "[a]n impairment is severe if it is anything more than a slight abnormality that would not be expected to interfere with a claimant's ability to work." *Salmond v. Berryhill*, 892 F.3d 812, 817 (5th Cir. 2018) (internal quotation marks omitted). Conversely, the Fifth Circuit instructs that a limitation is not severe "if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985).

Ms. Meza identifies internal inconsistencies in the ALJ's analysis of Mr. Meza's depression. Dkt. 17 at 6-7. The ALJ expressly found that Mr. Meza had "mild *to moderate*" limitations in two areas of functioning: interacting with others and adapting or managing himself. R.15 (emphasis added).

6

Nonetheless, the ALJ concluded that "[b]ecause the claimant's medically determinable impairment causes *no more than 'mild'* limitation in any of the functional areas, it is nonsevere ...." *Id.* (emphasis added).

The ALJ's findings that Mr. Meza had more than mild deficits in two functioning areas reflect that Mr. Meza had "more than a 'slight abnormality'" that affected his ability to work—*i.e.*, a severe impairment. *See Salmond*, 892 F.3d at 817. Even the Commissioner does not dispute that the ALJ's findings undermine her ultimate conclusion that Mr. Meza's depression was not severe. Dkt. 19 at 5-6 (arguing instead that any conflict was harmless). The ALJ's contradictory findings show that her classification of Mr. Meza's depression as non-severe was unsupported by substantial evidence. This was error.

### B.   The ALJ's error did not affect Mr. Meza's substantial rights.

The remaining question is whether the ALJ's error at step two warrants remand. Contrary to Ms. Meza's suggestion, Dkt. 17 at 12, failure to apply the proper definition of a "severe" impairment does not automatically warrant reversal. Instead, a court must further "consider whether the error was harmless" by examining the ALJ's findings and conclusions beyond step two of the analysis. *Keel v. Saul*, 986 F.3d 551, 556 (5th Cir. 2021) (holding that even if the ALJ "failed to properly apply the *Stone* standard [for severe impairment], such a conclusion does not require an automatic reversal").

Here, the ALJ recognized that Mr. Meza had three severe impairments other than depression.  R.14-15.  Ms. Meza is not challenging the ALJ's determination at step three that his depression (or any other severe impairment(s)) is not presumptively disabling.  R.16; *see* Dkt. 17 at 8 ("Movant is not asserting that his Depression is singularly disabling" under § 12.04).  And despite failing to conclude that Mr. Meza's depression was severe, the ALJ nonetheless accounted for Mr. Meza's depression symptoms when formulating the RFC.  *See* R.19 (discussing testimony of a psychiatric expert and factoring in his conclusions).  In doing so, the ALJ relied on testimony from a medical expert, Dr. Daniel Linowski, who considered Mr. Meza's symptoms of depression.  *See* R.53-56.  Dr. Linowski explained the medical evidence concerning Mr. Meza's anger management, substance abuse, and depression and concluded that limiting him to only occasional contact with supervisors, co-workers, and the general public "would be optimal."  R.56.  That is what the ALJ did in the RFC.  R.16.

On this record, the Court finds no basis for concluding that the outcome would have differed had the ALJ explicitly classified Mr. Meza's depression as severe.  Ms. Meza "thus fails to overcome the harmless error rule." *Keel*, 986 F.3d at 557.

8

## II.   **The ALJ properly considered the medical evidence when forming Mr. Meza's RFC.**

Ms. Meza next challenges the ALJ's formation of Mr. Meza's RFC.  First, Ms. Meza argues that the medical evidence shows that her husband could not have sustained work continuously during the period of alleged disability.  Dkt. 17 at 12-14.   Second, she alleges that the ALJ improperly cherry-picked evidence when forming the RFC.  *Id.* at 15-16.

When an ALJ creates an RFC, she determines "the most the claimant can do despite [his] physical and mental limitations and [bases the RFC] on all relevant evidence in the claimant's record." *Kneeland*, 850 F.3d at 754 (quoting *Perez*, 415 F.3d at 461-62).  This determination is based on the totality of the circumstances surrounding a claimant's impairments, *see* 20 C.F.R. § 404.1545(e), and the ALJ must consider all relevant medical opinions and evaluate them based on several factors.   *See* 20 C.F.R. § 404.1520c(c). Permissible reasons for discounting medical testimony include contradictory medical reports from other physicians or a claimant's lack of credibility.  *See Hollis v. Bowen*, 837 F.2d 1378, 1386-87 (5th Cir. 1988) (per curiam) (affirming ALJ's rejection of the plaintiff's claims of excessive pain as unsupported by her medical history); *see also Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995) (per curiam) (affirming ALJ's denial of benefits in the face of contradicting medical evaluations).  Although the ALJ must explain how she determined

that any medical testimony lacks support or is inconsistent with other evidence, the ALJ need not address all the relevant factors. *See* SSR 96-8p, 1996 WL 374184 (July 2, 1996); 20 C.F.R. § 404.1520c(b)(2).

### A.   Any determination concerning Mr. Meza's ability to maintain employment was subsumed into the ALJ's finding that Mr. Meza could perform work.

As Ms. Meza observes, the ALJ did not make an explicit finding about Mr. Meza's ability to sustain employment for a significant time. Dkt. 17 at 12-16. But the Fifth Circuit holds that such a finding is not always required. *See Frank v. Barnhart*, 326 F.3d 618, 621 (5th Cir. 2003). This is true "even cases in which the applicant does not suggest that there is any difference between the issue of his ability to work and his ability to sustain work." *Id.* Rather, the sole question is whether a claimant's limitations preclude him from obtaining a job. *Id.*

According to Ms. Meza, her husband was routinely hospitalized for cardiac impairments, and that those hospital visits impaired his ability to obtain "full time competitive work." Dkt. 17 at 15. But unless Mr. Meza's impairment occurred so frequently that it prevented him from working for a substantial period of time, the ALJ need not make an express finding that Mr. Meza could maintain employment. *Frank*, 326 F.3d at 621. And here, Ms. Meza does not argue that Mr. Meza could work only for short stints—she argues that he was incapable of *any* work. *See* Dkt. 17 at 1. The Commissioner

is thus correct that whether Mr. Meza can sustain employment is subsumed within the ALJ's finding of whether he can obtain employment at all.  *See* Dkt. 19 at 7; R.17-18 (recounting Mr. Meza's hospitalizations and analyzing the reasons for his admission).  The absence of an explicit finding about Mr. Meza's ability to maintain employment provides no grounds for reversal.

## B.   The ALJ's RFC was supported by substantial evidence.

As her final argument, Ms. Meza asserts that the ALJ "picked and chose" the evidence supporting the RFC determination.  Dkt. 17 at 15 (citing *Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000)).   Ms. Meza argues that the ALJ "neglected to evaluate all of [Mr. Meza's] impairments and numerous medical hospitalizations and ER visits in formulating her Decision."  Dkt. 17 at 16. Other than listing Mr. Meza's various hospital admissions, however, Ms. Meza does not indicate what medical evidence to which she refers.  *Id.*

Under the substantial evidence standard, this Court cannot conduct a *de novo* review of the ALJ's determination.   Rather, the Court decides only whether there is sufficient evidence such that "a reasonable mind might accept [it] to support a conclusion."  *Greenspan*, 38 F.3d at 236.  "The fact that the ALJ cited certain evidence that [s]he felt supported his decision does not mean that [s]he failed to consider all of the other evidence in the record."  *Brunson v. Astrue*, 387 F. App'x 459, 461 (5th Cir. 2010) (per curiam).

Contrary to Ms. Meza's arguments, the ALJ did consider the medical evidence and made extensive findings concerning Mr. Meza's hospitalizations and how they impacted his ability to work. *See* R.17-18. The ALJ went through each hospitalization or emergency-room admission, described Mr. Meza's medical symptoms, and detailed how those symptoms related to his medical limitations. *See* R.18 (noting that many of his hospital visitations were related to chest pains). The ALJ also correctly noted that many of those hospital admissions stemmed from alcohol and drug use. *See* R.1694 (chronic marijuana use), 2412 (mixing of alcohol with medications prescribed for dental procedure), 4588 (chronic alcohol use).

The ALJ also obtained expert testimony from Dr. Albert Oguejiofor that further supported the RFC. As Dr. Oguejiofor explained, Mr. Meza's recent cardiovascular evaluation showed that his heart function was normal. R.50; *see also* R.4612. Based on the medical records, Dr. Oguejiofor opined that Mr. Meza could perform work at the light exertional level, along with additional restrictions to account for his pulmonary condition. R.51-52 (recommending climate-controlled environments). Those records negate Ms. Meza's contention that the "actual evidence ... belies [the expert's] testimony." Dkt. 17 at 16.

Ultimately, the ALJ weighed and resolved the conflicting evidence. This Court cannot second-guess the ALJ's conclusions. *See Whitehead*, 820 F.3d at 782 (courts cannot "reweigh the evidence or substitute [their] judgment for the

ALJ's").  Because the ALJ's decision was supported by evidence that "a reasonable mind might accept to support a conclusion," *Greenspan*, 38 F.3d at 236, that decision should be affirmed.

## Recommendation

For the foregoing reasons, it is **RECOMMENDED** that the Court **GRANT** Defendant's motion for summary judgment (Dkt. 18), **DENY** Plaintiff's motion for summary judgment (Dkt. 17), and **AFFIRM** the decision of the ALJ.

**The parties have fourteen days from service of this Report and Recommendation to file written objections.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  Failure to file timely objections will preclude appellate review of factual findings and legal conclusions, except for plain error.  *Ortiz v. City of San Antonio Fire Dep't*, 806 F.3d 822, 825 (5th Cir. 2015).**

Signed on August 30, 2022, at Houston, Texas.

Yvonne Y. Ho
United States Magistrate Judge